[No. A039489. First Dist., Div. One. Sept. 19, 1989.]

JULIAN LA BATO, Plaintiff and Respondent, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant
and Appellant.

**COUNSEL**

Otto F. Becker, Michael F. Scully and Thornton, Taylor & Downs for Defendant and Appellant.

David Van Hoesen, Van Hoesen & Rowen and Van Hoesen, Epstein, Englert & Rowen for Plaintiff and Respondent.

## OPINION

**HOLMDAHL, J.**—Part of La Bato's backyard fell into a creek during a storm. State Farm rejected the claim which La Bato submitted under his all-risks homeowner's insurance policy. State Farm now appeals from a judgment for $233,372.67 entered against it on account of this rejection.

The judgment is reversed.

### Statement of Facts

Julian La Bato bought a house at 157 Ponderosa Lane in Walnut Creek in 1977 and has lived in that house continuously since 1978. At the time La Bato moved in, the backyard of the house extended to Las Trampas Creek, and the house itself was about 40 or 45 feet from the bank of the creek. As of 1982, the left hand side of the backyard, as one faced the creek from the house, was partially covered by a redwood deck which La Bato had built and connected to the house.

At the time La Bato bought the house, he bought an all-risk homeowner's insurance policy issued by State Farm Fire and Casualty Company (State Farm), through State Farm agent Channing Parrett. The policy included the following language.

"Reasonable Repairs. We will pay the reasonable cost incurred by you of repairing damage to covered property necessary to protect the property from further damage or loss, provided coverage is afforded for the peril causing the loss. This coverage does not increase the limit of liability applying to the property being repaired."

Under the heading "EXCLUSIONS," the following language appeared.

"We do not cover loss resulting directly or indirectly from:

. . . . . . . . . . . . . . . . . . . .

"2. Earth Movement. Direct loss by fire, explosion, theft, or breakage of glass or safety glazing materials resulting from earth movement is covered.

"3. Water damage, meaning:

"a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

"b. water which backs up through sewers or drains; or

"c. natural water below the surface or the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

"Direct loss by fire, explosion or theft resulting from water damage is covered.

"4. Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Peril Insured Against. . . ."

Additionally, the parties correctly agree that the policy provided coverage only for damage to or loss of structures on the land, not for damage to or loss of the land itself.

This policy was in effect on the night of January 4-5, 1982, when a very heavy rainstorm had been going on for some time. At about 2 a.m., La Bato was awakened by a loud sound. At about 3 a.m., he turned on the floodlights in the back of his house to illuminate his backyard, got an umbrella, and went out to investigate. The water in Las Trampas Creek sounded much closer than it had before, and he could see that the creek had changed its course.[1] The bank of the creek was now closer to the house, and part of La Bato's backyard simply was not there anymore.[2] Further investigation, after daylight, revealed no further change in the course of the creek. Both La Bato's house and the connected deck were intact and in place, although the back of La Bato's house was now about seventeen feet from the creek bank and the deck now extended to within two or three feet of the creek bank. La Bato has not lost any more area from his lot since January 1982.

On January 7, 1982, La Bato telephoned Parrett and told him about the loss. Parrett told La Bato that the loss was not covered under La Bato's homeowner's policy, and declined La Bato's invitation to visit La Bato's house and see what had happened. La Bato called Parrett again on March 2 and 26, April 12, and June 9, 1982, trying to get State Farm to accept his

---

[1] La Bato's expert witness at trial, Paul J. Seidelman, testified that Las Trampas Creek had undergone numerous changes in its course over the past million years, meandering back and forth within a corridor approximately three quarters of a mile wide, and would probably continue such course changes for the next million years as well.

[2] Seidelman estimated that La Bato had lost "approximately eleven hundred square feet of usable yard space," amounting "to eighteen percent reduction in the size of the original lot."

claim. Parrett's answer remained the same—no coverage and no point in coming to look at the damage. Parrett confirmed his denial of La Bato's claim in a short letter dated March 2, 1982.

In the spring or summer of 1982, La Bato put riprap in the creek bed, to abate erosion of the creek banks and to reduce the chance of another damaging change in the course of the creek. In 1983, La Bato had a retaining wall installed, at his own expense, further to protect his property. La Bato notified State Farm that he had spent $36,550.43 on remedial work resulting from the loss of January 5, 1982.

### Procedural History

In November 1984, La Bato sued State Farm in Contra Costa County Superior Court, claiming that State Farm's denial of coverage was a breach of contract perpetrated in bad faith and in violation of State Farm's statutory duties under Insurance Code sections 790.02 and 790.03. La Bato's complaint alleged both intentional and negligent infliction of emotional distress, fraud, and breach of fiduciary duty as additional theories of recovery. These additional theories of recovery were dismissed on La Bato's motion during *in limine* proceedings before trial. Jury trial resulted in a verdict in La Bato's favor, for $213,000 in compensatory damages. Judgment for La Bato was entered for that amount, plus prejudgment interest of $13,392 and costs of $6,980.67. State Farm appeals.

### The Challenged Jury Instructions

La Bato's theory at trial, as revealed in his attorney's argument to the jury, was that the departure of a portion of his backyard damaged his deck (covered property) through the removal of lateral support for that deck (see *Hughes* v. *Potomac Ins. Co.* (1962) 199 Cal.App.2d 239, 243 [18 Cal.Rptr. 650], disapproved on another point in *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 34 [27 Cal.Rptr. 689, 377 P.2d 889], involving very similar facts, except that the departure of land left plaintiffs' house partially overhanging Las Trampas Creek), and that State Farm was therefore contractually obliged to pay for the remedial work which was done to repair that damage and to prevent further damage through further loss of land. La Bato does not contend that the departure of a portion of his backyard was not earth movement, within the meaning of that term as used in his homeowner's insurance policy.[3] Under La Bato's theory of recovery, the earth movement and water damage

---

[3] Under cross-examination by one of State Farm's attorneys, Seidelman was describing the various phenomena which, in his opinion, combined to cause the departure of a portion of La Bato's backyard. The attorney asked, "Are we talking about a landslide?" Seidelman responded, "You're talking, ah, about earth movement; yes."

exclusions of the policy did not apply because there were numerous other concurrent proximate causes for the loss which were not excluded from coverage. These other concurrent proximate causes included rain, high water in Las Trampas Creek, a tree toppling into Las Trampas Creek, erosion of the creek bank (see *Peach State Uniform Service, Inc.* v. *American Ins. Co.* (5th Cir. 1975) 507 F.2d 996, 1000), debris in the creek bed, changes in the rate of flow of the creek water, and urbanization.

The instructions which the trial court gave to the jury supported La Bato's theory, as to the question of exclusions from coverage. State Farm proposed the following jury instruction with regard to its burden of proof.

"The defendant has the burden of establishing by a preponderance of evidence all facts necessary to prove that . . . the claim falls within the terms of any applicable exclusions in the policy." The trial court gave this instruction, but modified it by adding the following sentence. "That there was no concurrent proximate cause which was not excluded."

Further on in his instructions to the jury, the trial judge elaborated on State Farm's burden of proof as follows.

"In an 'all-risks' insurance policy, such as that issued to Mr. La Bato, Mr. La Bato does *not* have the burden of proof that a nonexcluded (covered) risk was a proximate cause of his damages. [¶] Rather, State Farm has the burden of proof that no nonexcluded (covered) risk was a proximate cause of the loss. [¶] In other words, in order to avoid coverage, State Farm must prove that the loss was not proximately caused by any nonexcluded (covered) risk."

The trial court instructed on proximate cause as follows.

"A proximate cause of damage, is a cause which, in natural and continuous sequence, produces the damage, and without which the damage, would not have occurred." (BAJI No. 3.75 (1982 rev.), modified, requested by La Bato and concurred in by both parties.)

"There may be more than one proximate cause of damage. When two or more causes contribute concurrently as proximate causes of damage, each is a proximate cause of damage if without said cause the damage would not have occurred. This is so regardless of the extent to which each contributes to the damage. A cause is concurrent if it was operative at the moment of injury and acted with another cause to produce the injury. [¶] If you find that more than one cause joined in proximately causing the damages, as long as one of the causes is not excluded by the policy, the damages are

covered by the policy." (Requested by La Bato, given as modified by the court.)

State Farm objected to the court's modification of its proposed instruction on its burden of proof and objected to all of the further instructions quoted above dealing with State Farm's burden of proof and with concurrent proximate causes.

Additionally, the trial court refused State Farm's request that Insurance Code sections 530 and 532 be read to the jury. Insurance Code section 530 provides, "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause." Insurance Code section 532 provides, "If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted [from coverage] even though the immediate cause of the loss was a peril which was not excepted." (*Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 401 [257 Cal.Rptr. 292, 770 P.2d 704] [hereinafter *Garvey*], bracketed words added by the *Garvey* court.)

State Farm also requested an instruction based on *Sabella* v. *Wisler, supra,* 59 Cal.2d 21, which correctly interprets Insurance Code sections 530 and 532 as denying coverage when the predominant cause of a loss is a peril which is among those excluded from coverage by the terms of an insurance policy. (See *Garvey, supra,* 48 Cal.3d at pp. 402-403.) The trial court refused to give that instruction.

In his opening argument, La Bato's attorney read the last sentence of the instructions on concurrent proximate causes quoted above (p. 341, *ante*) to the jury, twice, and then commented as follows. "I interpret that to mean, and I think the instruction is clear, that if you have two or more proximate causes of an injury and one of them is not excluded by the policy, then there is coverage. [¶] If you have five proximate causes and four of them are excluded by the policy and one isn't, then there is coverage. [¶] If you have five proximate causes and one of them is excluded by the policy and four of them is not excluded, then there is coverage. [¶] This is the law. This is not something which you have to grapple with and try to justify. This is what the Judge will instruct you as to the law."

*Discussion*

██ ██ At oral argument, La Bato conceded that the instructions given to the jury in the present case were inconsistent with the law as declared in

*Garvey.* La Bato sought to avoid a reversal based on that inconsistency by contending that *Garvey* should not be given retroactive effect. We asked for and have received supplemental briefing on the question of *Garvey*'s retroactivity.

The parties agree that the usual rule is that judicial decisions operate retrospectively. "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." (*United States* v. *Security Industrial Bank* (1982) 459 U.S. 70, 79 [74 L.Ed.2d 235, 243, 103 S.Ct. 407].) La Bato cites *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 988-989 [258 Cal.Rptr. 592, 772 P.2d 105] (holding that *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] is fully retroactive) and contends that the usual rule should not apply because of reliance by litigants on a former, contrary rule expressed in cases which *Garvey* disapproves, either explicitly or by necessary implication.

Unquestionably, the rule of concurrent proximate causes on which La Bato relied at trial, and which La Bato persuaded the trial court to adopt in its jury instructions, found expression in a number of published opinions by intermediate appellate courts which applied the rule in determining coverage for claims by insureds against their insurers (first party claims). (*Farmers Ins. Exchange* v. *Adams* (1985) 170 Cal.App.3d 712, 722 [216 Cal.Rptr. 287]; *Premier Ins. Co.* v. *Welch* (1983) 140 Cal.App.3d 720, 727-728 [189 Cal.Rptr. 657]; *Safeco Ins. Co. of America* v. *Guyton* (9th Cir. 1982) 692 F.2d 551, 554-555; *Hughes* v. *Potomac Ins. Co., supra,* 199 Cal.App.2d at p. 244; *Zimmerman* v. *Continental Life Ins. Co.* (1929) 99 Cal.App. 723, 726 [279 P. 464].) If the contrary rule expressed in *Garvey* constitutes a new rule of law, litigants' reliance on the rule of concurrent proximate causes would weigh significantly in favor of making *Garvey* prospective only.

However, the rule of *Garvey* is not a new rule of law, in three significant senses. First, *Garvey* is a confirmation and explication of the rule of *Sabella* v. *Wisler, supra,* 59 Cal.2d 21, which the Supreme Court of California decided over 20 years before the trial of this case. Second, *Garvey* overrules no prior decision of the California Supreme Court. (See *Garvey, supra*, 48 Cal.3d at p. 416 (conc. opn. of Kaufman, J., urging that the *Garvey* court should have overruled *State Farm Mut. Auto Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]).) Third, both *Garvey* and *Sabella* give effect to a statutory rule codified in Insurance Code sections 530 and 532. Contrary cases constitute a misconstruction of that statutory rule. Under these circumstances, no exception to the usual rule of retroactivity can apply. *Garvey* applies in all cases not yet final at the time of its

decision, including the present case. (*People* v. *Guerra* (1984) 37 Cal.3d 385, 399, including fn. 13 [208 Cal.Rptr. 162, 690 P.2d 635].)

■ La Bato's fallback position is to argue that even if *Garvey* is retroactive, the trial court's error in jury instructions does not require reversal because there was coverage under his insurance policy, as a matter of law. To make this claim, La Bato must deal with the evidence which demonstrates that the predominant or most important cause of the damage which he suffered was earth movement. La Bato seeks to do so by contending that the departure of a portion of his backyard was his loss, not a cause of his loss. He argues, " 'Earth movement' did not cause anything—it was caused by nonexcluded risks."

We are not persuaded by this argument. If La Bato's loss was a departure of a portion of his backyard, there can be no coverage, because the policy does not insure against loss of land. If the departure of a portion of his backyard did, as he argued in the trial court, leave his deck in a damaged condition, through the presence of a void where supporting earth should have been, earth movement caused that void.

"Since *Garvey* was decided long after the trial here, the issue is whether the instructions given to the jury accurately stated the law as subsequently interpreted in *Garvey*." (*Mission National Ins. Co.* v. *Coachella Valley Water Dist.* (1989) 210 Cal.App.3d 484, 493 [258 Cal.Rptr. 639].) State Farm complains that the trial court's instructions were a misstatement of the law under *Garvey* and "virtually mandated a finding of coverage." State Farm is correct. The jury's task was ". . . 'one of identifying the most important cause of the loss and attributing the loss to that cause.' " (*Garvey, supra,* 48 Cal.3d at p. 406, quoting Bragg, *Concurrent Causation and the Art of Policy Drafting: New Perils for Property Insurers* (1985) 20 Forum 385, 387.) The instructions which the jury received set the jury an entirely different task, that of identifying all the proximate causes and seeing whether any of them was a covered (nonexcluded) peril.

The trial court's instructions seriously misstated the law, misled the jury, and resulted in a miscarriage of justice which requires reversal. (See Cal. Const., art. VI, § 13.) The question remains whether State Farm is due any additional relief.

State Farm requests "that this matter be remanded to the trial court with instructions to enter judgment for State Farm. If the court desires that a properly instructed jury decide the contract issues, appellant nonetheless requests a ruling that, as a matter of law, State Farm's coverage position was a reasonable one which precludes tort liability." In other words, State

Farm claims that in view of Insurance Code sections 530 and 532, as interpreted in *Sabella* v. *Wisler, supra,* 59 Cal.2d 21 and *Garvey, supra,* 48 Cal.3d 395, no triable issue of fact exists, as to some or all of La Bato's theories of recovery, and that State Farm is therefore entitled to a decision in its favor, as a matter of law.

We believe that the trial court should have the opportunity to decide the validity of State Farm's claim in the first instance, in the context of a motion for summary judgment and/or for summary adjudication of issues, should State Farm choose to make such a motion on remand.

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Newsom, Acting P. J., and Stein, J., concurred.