*692 OPINION OF THE COURT
Harry Richard Brown, J.
This is a declaratory judgment action in which the plaintiffs seek a declaration that damage to their property caused by the storage and release of toxic substances is covered under their policies with the five insurance carriers named as defendants, and that the insurance companies are obligated to defend and indemnify plaintiffs with respect to claims for damages pertaining to the cleanup and remediation of the premises. Defendant Continental Insurance Company (Continental) has moved for summary judgment asserting that the damages and losses sustained by plaintiffs are not covered under the terms of its policy. In opposition, plaintiffs argue that Continental is not entitled to summary judgment.
Plaintiffs are the owners of a parcel of land in Deer Park, New York, upon which a building is located (the premises). In 1979, plaintiffs leased a part of their building to T & S Metals Finishing, Inc. (T & S), which later was taken over by Circle Technology, Inc. (CTI). CTI and plaintiff Norman Budofsky were the named insureds under a policy of comprehensive general liability insurance issued by Continental, which was in effect from August 15,1986 to December 23, 1986.
T & S and CTI were in the business of electroplating metal products. Between May 1, 1982 and November 13, 1987, the operations of plaintiffs’ tenants generated industrial waste which was released into the dry wells and cesspool system on the premises. In 1983 and again in 1985, the Suffolk County Department of Health Services (SCDHS) sampled the dry wells and cesspool system and found liquids and sludges contaminated with heavy metals and other hazardous substances. During this time and continuing through 1987, plaintiffs’ tenants ignored the directive of SCDHS and orders from the New York State Department of Environmental Conservation (DEC) to remove the contaminated material from the premises. In November of 1987, the tenants abandoned the premises, leaving sludge and drippings on the walls and floors of the building and 35 55-gallon drums filled with contaminated sludge.
In February 1988, the DEC notified plaintiff, Norman Budofsky, that his property had been placed on the State Registry of Hazardous Waste Sites and advised plaintiff that he was a potentially responsible party in connection with the cleanup and remediation of the site. Thereafter, plaintiffs engaged the *693 firm of Chemical Pollution Control, Inc. to clean up the site and to determine what remedial action might be necessary. Cleanup of the surface has been completed at plaintiffs’ expense but remediation of the subsurface remains to be accomplished.
Defendant Continental received a notice of claim by way of a letter from plaintiffs’ counsel dated July 12, 1988. In response, Continental advised plaintiffs that it was reserving its right to deny coverage pending an investigation of the coverage afforded under its policy. On December 30, 1988, plaintiffs began this action, seeking a declaratory judgment that, with respect to defendant Continental, the loss of rents and losses to buildings and contents sustained by plaintiffs are covered by its insurance policy and, therefore, defendant is legally obligated to reimburse plaintiffs for such losses and that defendant must defend plaintiff Norman Budofsky with regard to environmental claims for damages caused by the storage and release of toxic materials at and upon the premises.
In its answer to the complaint and in its moving papers for summary judgment, Continental asserts that the losses alleged by plaintiffs do not constitute property damage within the meaning of its policy, and that coverage is precluded by the pollution exclusion clause.
Plaintiffs’ policy with Continental is for comprehensive general liability insurance, by which the company agrees to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage” (emphasis added). An occurrence is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.” Property damage is defined as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.”
The policy includes an endorsement containing a pollution *694 exclusion, which provides, in pertinent part, that this insurance does not apply:
"(1) to * * * property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants;
"(a) at or from premises owned, rented or occupied by the named insured;
"(b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;
"(2) To any loss, cost or expense arising out of any governmental directions or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.”
The principal issues raised in the moving papers are (1) whether the pollution exclusion clause unambiguously applies in this case and (2) if so, whether defendant is entitled to summary judgment.
Under New York law, any exclusions or exceptions from policy coverage must be couched in language that is clear, specific and unmistakable (Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984]). In construing an insurance policy, the tests to be applied are common speech and the reasonable exception and purpose of the ordinary businessman. Ambiguities are to be construed against the insurer, particularly when found in an exclusionary clause (Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., 60 NY2d 390, 398 [1983]). An unambiguous policy provision must be accorded its plain and ordinary meaning, and a court may not disregard the plain meaning of the policy’s language in order to find an ambiguity where none exists (Ramirez v United States Fed. & Guar Co., 133 AD2d 146, 148 [2d Dept 1987]).
Before an insurance company is permitted to avoid policy coverage, it must satisfy the burden of establishing that the exclusion or exemption applies in the particular case and is subject to no other reasonable interpretation (Seaboard Sur. Co. v Gillette Co., supra). If the insurer can establish, as a matter of law, that the damage or injury complained of is unambiguously excepted from coverage, summary judgment in *695 favor of the insurer is proper (Smith Jean, Inc. v Royal Globe Ins. Cos., 139 AD2d 503, 504 [2d Dept 1988]).
The pollution exclusion clause at issue has not been interpreted in a reported decision of any New York court. However, courts in other States have examined pollution exclusion clauses identical to the one in Continental’s policy and have found no ambiguity. For example, in Alcolac Inc. v California Union Ins. Co. (716 F Supp 1546, 1549 [D Md 1989]), the court stated, "There is no ambiguity in the clause, it is clear on its face”. The same clause was found to be "clear and unambiguous” in League of Minn. Cities Ins. Trust v City of Coon Rapids (446 NW2d 419, 422 [Minn App 1989]) and in Guilford Indus, v Liberty Mut. Ins. Co. (688 F Supp 792, 794 [D Me 1988]).
This court agrees with the above interpretations and in particular with the comment in Alcolac (supra), where the court stated, "This pollution exclusion is just what it purports to be — absolute” (716 F Supp, at 1549). The identical clause in Continental’s policy sets forth in plain and unmistakable language that this insurance does not apply to property damage due to pollutants released at or from premises owned by the insured, at or from any site used for the storage of waste, and to any loss, cost or expense arising out of governmental directives to clean up and remove the pollutants.
Plaintiffs do not contend, nor can it be reasonably argued, that the waste and sludge containing heavy metals and other hazardous substances do not fall within the meaning of pollutants. Plaintiffs do argue that the pollution damage was caused by one or more occurrences (accidents) within the policy coverage. But the policy language indicates that the exclusion was meant to apply regardless of whether the acts which resulted in contamination were accidental or intentional. The original exclusion had included an exception for situations in which the discharge or release was sudden and accidental. That language is deleted from the endorsement which replaces the original exclusion, indicating that damage to property from all discharges or releases of pollutants is excluded.
Plaintiffs also argue that they had no involvement in the activities which resulted in contamination of their premises and, therefore, the court should look upon them as victims of the acts of other parties. The fact that plaintiffs are not the active polluters in this case is irrelevant, for section 1 (a) of *696 the exclusion clearly indicates that this insurance does not apply to pollution damage to premises owned by the insured. In point of fact, it is fundamental that under a property damage liability contract, the insurer is obligated to pay damages to the insured only for the destruction or injury to property of another person (1 Long, Liability Insurance § 1.03, at 1-6 [Bender]). This principle is incorporated into Continental’s policy in item (k) of the standard exclusions: "This insurance does not apply to property damage to property owned * * * by the insured.”
Plaintiffs also argue that defendant is not entitled to summary judgment in part because "a myriad of issues of fact” remain to be tried. It is true that if material facts are in dispute, the action must go to trial. The essential determination on a motion for summary judgment is whether a genuine issue of fact has been presented (Lane v New York State Elec. & Gas, 99 AD2d 597, 598 [3d Dept 1984]).
Here, the court is satisfied that with respect to Continental and the plaintiffs, there are no genuine material facts in dispute. As the proponent of this motion, defendant was required to make a prima facie showing of entitlement to judgment as a matter of law, offering sufficient evidence to eliminate any material issues of fact from the case (Tri-State Equip. Leasing Co. v Felix Industries/Ecco Equip., 125 AD2d 565, 567 [2d Dept 1986]). The pertinent provisions of Continental’s policy have been provided and the court finds them to be clear, unambiguous and not subject to any other reasonable interpretation. Neither party has pointed to the existence of evidence extrinsic to the insurance policy bearing on the intention of the parties at the time of its execution. Thus, no question of credibility exists and there are no inferences to be drawn from extrinsic evidence (Hartford Acc. & Indem,. Co. v Wesolowski, 33 NY2d 169, 172 [1973]). Therefore, defendant has met its burden and summary judgment is granted.
Accordingly, summary judgment is granted to movant, Continental Insurance Company. The matter is severed and continued as to the remaining defendants.