244 N.J. Super. 245 (1990)
581 A.2d 1368
ROCCO SINOPOLI, PLAINTIFF-APPELLANT,
v.
THE NORTH RIVER INSURANCE COMPANY, GERALD LARDIERE AGENCY, CUMBERLAND INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1990.
Decided November 7, 1990.
*248 Before Judges BRODY and D'ANNUNZIO.
Robert D. Kretzer argued the cause for appellant (Lamb, Hartung, Coughlin, Kretzer & Reinman, attorneys).
Anthony J. Riposta argued the cause for respondent North River Insurance Company (Riposta & Reilly, attorneys).
Anthony P. Pasquarelli argued the cause for respondent Cumberland Mutual Fire Insurance Company (Methfessel & Werbel, attorneys).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
This is a liability insurance coverage case arising out of an incident which occurred on July 1, 1982. On that date, Ronald Rogers, an infant, accompanied his mother to Lou Rocco's Shoe Store in Bloomfield, New Jersey. Ronald wandered from his mother, left the public portion of the store and entered a non-public room attached to the store. While in the room, Ronald came into contact with an open container of sulfuric acid and suffered severe personal injuries. It is alleged that the acid was marketed under the trade name Drain Snake as a chemical useful in the plumbing industry. Ronald and his mother filed a complaint seeking damages against Lou-Rocco Shoes, Inc., Rocco Sinopoli individually, Louis Maiocco individually, Rocco Sinopoli and Louis Maiocco t/a Lou Rocco Shoes and others.
It appears from the record that Sinopoli and Maiocco each owned 49% of the stock of Lou Rocco Shoes, Inc. (the corporation). Their wives each owned 1% of the stock. The corporation owned the building in which the shoe store was located, and it was insured under a commercial liability policy issued by the General Accident Insurance Group (General). General has deposited the $500,000 limit of its liability policy into court to settle the Rogers' claim. The Rogers, alleging that their damages *249 exceed $500,000, have refused to accept that amount in full settlement.
Faced with a claim in excess of the corporation's liability policy, Rocco Sinopoli commenced this declaratory judgment action against Cumberland Mutual Insurance Company (Cumberland), the issuer of a homeowner's insurance policy to Sinopoli and his wife, and against North River Insurance Company (North River), the issuer of an excess liability insurance policy to the Sinopolis.
The parties concede that the North River policy does not cover claims which are not covered by scheduled underlying insurance, i.e., the Cumberland policy. The parties agree that if the Cumberland policy does not cover Sinopoli for the Roger's incident, then there is no excess coverage under North River's policy. The parties also agree that there is coverage under the Cumberland policy unless exclusions A.3 and A.5 apply.
Exclusion A.3 provides that Cumberland does not cover any loss under its personal liability coverage
For bodily injury or property damage:
....
3. Arising out of any business activities of an insured, except:
....
b. Those within the term business pursuits;
....
The policy's glossary defines business pursuits:
C. Business Pursuits under Section 2 means
1. occupation as a clerical office employee, including executives whose activities are limited to clerical office work; and
2. occupation as a sales person, cashier or messenger  but not those engaged in installation, demonstration, or servicing.
However, this insurance does not apply to:
....
3. bodily injury or property damage arising from any business owned or financially controlled by the insured or by a partnership in which the insured is a partner.
Exclusion A.5 provides that Cumberland does not cover any loss.

*250 5. Arising out of a premises owned, rented, or controlled by an insured, other than an insured premises....
On cross-motions for summary judgment by Sinopoli, Cumberland and North River, the trial court determined that exclusion A.5 applied. The trial judge did not address A.3's applicability. Sinopoli now appeals.
Our function when construing a policy of insurance, as with any other contract, is to search broadly for the probable intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policy. Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567, 178 A.2d 185 (1962); Tooker v. Hartford Acc. and Indemn. Co., 128 N.J. Super. 217, 222-223, 319 A.2d 743 (App.Div. 1974). However, the language of liability insurance policies should be construed liberally in favor of the insured and strictly against the insurer, Sandler v. N.J. Realty Title Ins. Co., 36 N.J. 471, 479, 178 A.2d 1 (1962); accord Keown v. West Jersey Title and Guaranty Co., 161 N.J. Super. 19, 27, 390 A.2d 715 (App.Div. 1978), certif. den. 78 N.J. 405, 396 A.2d 592 (1978), and in such manner as to provide full coverage of the indicated risk rather than to narrow protection. 13 Appleman, Insurance Law and Practice, § 7486 at 622. (Buckley ed. 1979). Conversely, exclusionary clauses should be strictly construed. Weedo v. Stone-E-Brick, Inc., 155 N.J. Super. 474, 485, 382 A.2d 1152 (App.Div. 1977), rev'd on other grounds, 81 N.J. 233, 405 A.2d 788 (1979); Butler v. Bonner & Barnewell, Inc., 56 N.J. 567, 576, 267 A.2d 527 (1970); Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 8, 170 A.2d 800 (1961).
Nevertheless, the rule of liberal construction cannot operate to authorize a perversion of the language and the intention of the contracting parties. See James v. Federal Insurance Co., 5 N.J. 21, 24, 73 A.2d 720 (1950); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960); accord Scarfi v. Aetna Casualty & Surety Company, 233 N.J. Super. 509, 559 A.2d 459 (App.Div. 1989). The court cannot *251 rewrite the contract for the parties. See Middle Dept. Insp. Agency v. Home Ins. Co., 154 N.J. Super. 49, 54, 380 A.2d 1165 (App.Div. 1977), certif. den. 76 N.J. 234, 386 A.2d 858 (1978). Nor is a court permitted, even under the guise of good faith and peculiar circumstances, to alter the terms of an otherwise unambiguous contract. If plainly expressed, the insurers are entitled to have liability limitations construed and enforced as expressed. 13 Appleman, supra, § 7486 at 623. Although a liability policy covers all losses which are fairly within the terms of the policy, it cannot be extended to liabilities or losses which are neither expressly or impliedly within its terms. 6B Appleman, supra, § 4254 at 26.
If the controlling language of a policy supports two interpretations, one favorable to the insurer and the other favorable to the insured, a court is obligated to apply the interpretation supporting coverage. Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961). The reasonable expectation of the insured should be accorded so far as the language of the policy permits. Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305, 208 A.2d 638 (1965); Merchants Ind. Corp. v. Eggleston, 37 N.J. 114, 121-122, 179 A.2d 505 (1962). The burden is on the carrier to bring the case within the exclusion. Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 399, 267 A.2d 7 (1970).
Although the trial court did not address it, exclusion A.3 received more attention in the parties' briefs than A.5. Accordingly, we shall first address A.3.
The Rogers' claim arose out of Sinopoli's business activities[1] and, therefore, is excluded from coverage unless Sinopoli's business activities constitute "business pursuits." Sinopoli contends that his occupation was as a sales person employed by the *252 corporation, an occupation which qualifies as a business pursuit. In response, Cumberland and North River contend that even if Sinopoli was a sales person, there is no coverage because of the exception to the definition of business pursuits which precludes coverage for "bodily injury ... arising from any business owned or financially controlled by the insured or by a partnership in which the insured is a partner." The carriers would have us impute ownership of the business to Sinopoli based on the ownership by Sinopoli and his wife of 50% of the corporation's stock.
This approach has some appeal. However, the policy's scriveners recognized business ownership through legal entities when they referred to ownership by "a partnership in which the insured is a partner." Absent is a reference to ownership through the holding of stock in a closed corporation. In our view, the policy's silence regarding corporate ownership creates, at the very least, an ambiguity which must be resolved in favor of the insured. See Bryan Const. Co., Inc. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375, 377, 290 A.2d 138 (1972) (ambiguity to be resolved against insurer). We conclude, therefore, that Sinopoli did not "own" the shoe store within the meaning of the policy.
Nevertheless, we also conclude that the Sinopolis, the carrier's insureds, "financially controlled" the business through their 50% stock ownership. The corporation could not act without their concurrence.[2] Although Mr. and Mrs. Maiocco had the same power through their stock ownership, Cumberland's policy does not require exclusive financial control. Cf. Industrial Indem. Co. v. Goettl, 138 Ariz. 315, 674 P.2d 869 (Ariz. App. 1983) (operation of business through a corporation in which insured was one of two stockholders did not prevent *253 application of business exclusion in liability policy). We are satisfied that exclusion A.3 applies, thereby precluding coverage. We are not persuaded that application of the exclusion violates Sinopoli's reasonable expectations. The Cumberland and North River policies are personal liability insurance policies not designed to cover the liability risks of a business operation. For decisions regarding coverage under a homeowner's liability policy for business-related claims see generally N.J. Property Liab. Guar. Ass'n v. Brown, 174 N.J. Super. 629, 417 A.2d 117 (App.Div. 1980), certif. den., 85 N.J. 462, 427 A.2d 561 (1981); Solomon v. Continental Insurance Co., 122 N.J. Super. 125, 299 A.2d 413 (App.Div. 1972); Annotation, Construction and Application of "Business Pursuits" Exclusion Provision In General Liability Policy, 48 A.L.R.3d 1096 (1973).
We also agree with the trial court that exclusion A.5 applies. The Cumberland policy insured the Sinopolis' Cedar Grove, New Jersey home, not the Bloomfield building. Although title to the store building was in the corporation, the Sinopolis controlled it through their stock ownership. Cf. Sun Alliance Ins. Co. v. Soto, 836 F.2d 834 (3d Cir.1988) (business exclusion applicable though insured operated apartment house through a corporation). Moreover, the Rogers' complaint grounds Sinopoli's liability on allegations that he "was the owner and/or had control of said premises [the shoe store] and maintained them in an [sic] negligent manner." Thus, the allegations almost mirror A.5's language. Cf. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512, 210 A.2d 221 (1965) (test of duty to defend is whether allegation of the complaint falls within the risk insured against); Sun Alliance Ins. Co. v. Soto, supra.
Affirmed.
NOTES
[1] The Cumberland policy defines business as including "a trade, profession or other occupation (including farming) and use of any premises for such purposes."
[2] There is nothing in the record to suggest that the Sinopolis' power as 50% shareholders had been diluted through a shareholders agreement or special provisions in the corporation's certificate or by-laws.