PIERCE, Judge.
This is an appeal by appellant Seaboard Finance Company, a Delaware corporation, from a summary final judgment entered against appellant as plaintiff below and in favor of appellees Mutual Bankers Corporation, a Delaware corporation, and W. N. Saunders, defendants below, in a suit brought to recover damages in the sum of $90,000.00 alleged to be due pursuant to a previous written agreement between the parties relating to the sale by defendants to the plaintiff of majority stock holdings in a third corporation, Union Finance Corporation. The three corporations will be hereinafter referred to respectively as Seaboard,_ Mutual Bankers and Union.
On and prior to June 2, 1964, Union was in the small loan business, operating 55 wholly-owned subsidiaries in four States, Florida, Georgia, North Carolina and Tennessee, each subsidiary being a corporation organized in the State where located. Union was a corporation organized under the laws of Florida and was duly licensed and qualified in all respects to carry on a small loan business. The majority stockholders in Union were W. N. Saunders (both individually and jointly with his wife, Ruby Lee Saunders) and Mutual Bankers. Saunders, man and wife, largely owned and controlled Mutual Bankers as well as another corporation, W.N.S. Agency, Inc.
The business connection of W.N.S. was on the insurance end of the individual small loan offices by virtue of an “insurance agency arrangement” between Union and W.N.S. When a loan was made the borrower usually purchased through the loan office various kinds of credit insurance such as life, accident and health, and fire and casualty, invariably written through American Bankers Life Assurance Company of Florida or American Bankers Insurance Company of Florida. Premium *780 for the insurance was, of course, prepaid by the borrower at the time the loan was made and was divided fifty per cent to the insurer, five per cent to W.N.S., and forty-five per cent to the subsidiary making the loan. If and when such loan was prepaid or refinanced by the borrower, the unearned insurance premium on that loan was refunded or credited to the borrower by the particular subsidiary, which would later collect or receive credit from the insurer and W.N.S. for the unearned portion of their respective original premium participation. From the heavy volume of business done by the loan subsidiaries, there would inevitably be built up sizeable amounts of accumulated unearned premiums which would actually be held in trust by the local subsidiaries which would be refunded to the borrower if the loan was prepaid or refinanced, subject to proportionate reimbursement by the insurer and W.N.S.
On June 2, 1964, Seaboard entered into a written agreement with Saunders and Mutual Bankers, whereby Seaboard acquired from Saunders and Mutual Bankers a minimum of eighty per cent of outstanding stock of Union in exchange for certain stated preferred stock of Seaboard “on the basis of the representations and warranties” that the parties had expressed in the agreement. (Later Seaboard acquired all outstanding stock). The “representations and warranties” material to the instant suit is that set forth in Article 1(8) which states that “Neither Union nor any of its Subsidiaries has any contingent liabilities known to the officers and directors of Union * * *” other than certain stated liabilities not pertinent here.
The stock ownership transition of Union was smoothly effected and Seaboard took over control of Union’s loan business, including operation of the former fifty-five subsidiary offices of Union. And as time went on, the repayments of unearned insurance premiums refunded by the subsidiaries to borrowers because their loans would be prepaid or refinanced prior to maturity of the loans increased considerably. The subsidiaries were, or course, progressively refunding these unearned premiums as the contingencies arose, because they had originally collected them from the borrowers. On June 1, 1967, these refunds had amounted to a total of approximately $200,000.00, of which Seaboard (through its subsidiaries) had been reimbursed approximately $100,000.00 from the insurer and about $10,000.00 from W.N.S., representing their respective fifty per cent and five per cent of the original premium payments. This left $90,000.00 which to that date had been paid out by Seaboard’s subsidiaries to former borrowers, representing the aggregate net amount of unearned insurance premiums originally advanced to and retained by the subsidiaries prior to the transfer agreement of June 2, 1964, and for which Seaboard had not been reimbursed.
Said agreement in Article X(4) (ii) provided substantially that Saunders and Mutual Bankers would not be liable to Seaboard “for any amount” (such as payment or reimbursement of this $90,000.00 item) unless Seaboard “shall have delivered or served on each of the Principal Stockholders [Saunders and Mutual Bankers] * * * prior to December 31, 1965 * * * a written notice setting forth the amount of any such claim with a full and comprehensive statement of the particulars thereof.”
Not having been able to collect the $90,000.00 or any part thereof from Saunders or Mutual Bankers, Seaboard, on June 1, 1967 filed its complaint against them in the Hillsborough County Circuit Court, seeking recovery of said amount, contending that the retention of the original forty-five per cent of the unearned premiums constituted a “contingent liability” for which defendants would be liable under the warranty contained in the agreement of June 2, 1964, which allegedly protected Seaboard from such “contingent liabilities”.
The usual plethora of motions, depositions, interrogatories, etc., ensued, resulting *781 ultimately in an order being entered on March 26, 1968, taking note of the provision of Article X(4) (ii) of the agreement aforesaid requiring written notice of such claim to be made on or before December 31, 1965, and holding that, while “the depositions, exhibits and affidavits, without contradiction, reflect that plaintiff [Seaboard] did not give the contractually prescribed notice”, yet the Court would withhold entering summary judgment “in the present state of the record” until defendants had “filed an answer raising issues upon the merits”. Thereafter defendants Saunders and Mutual Bankers filed written defenses, one of which was that “no notice of plaintiff’s [Seaboard’s] claim was delivered or served on defendants” prior to December 31, 1965, “as required by Article X (4) (ii) of the parties’ agreement dated June 2, 1964.”
On June 27, 1968, the Court entered summary final judgment in favor of defendants Mutual Bankers and Saunders, holding that under the record before the Court there was “no genuine issue as to any material fact” and Mutual Bankers and Saunders were “entitled to a judgment as a matter of law”. We agree and affirm.
Three questions arise and may be stated as follows: (1) whether, in order to set up a valid defense to the warranty provision of the contract, defendants must show not only that they failed to receive the requisite written notice of Seaboard’s claims but also that they were prejudiced by such failure; (2) whether knowledge by defendants that Seaboard or the subsidiaries were making the insurance premium refunds es-topped defendants from asserting they did not receive the written notice of Seaboard’s claim, and (3) whether, under the warranty provision of the contract, the loan subsidiaries were even legally liable to refund to borrowers the unearned portions of the insurance premiums. We will discuss these three matters seriatim.
(1) Whether prejudice is necessary to he shown in addition to failure to receive notice of claims.
The contract of June 2, 1964, provided in Article X(4) (ii) that claims such as here involved would have to be presented “prior to December 31, 1965”. No intimation of claim was made against defendants until January of 1967, over a year beyond the stipulated date fixed in the contract. Defendants contend this bars the instant claim.
Seaboard, however, argues that the notice provision in the contract must be coupled with a showing of prejudice suffered by defendants because of such failure to give notice. Seaboard contends that its position is supported by California law, which, by explicit terms of Article XVIII (3) of the contract, must govern the construction and enforcement of “the provisions of this agreement”. Seaboard predicates this reliance upon decisions of the California Courts which hold generally that “insurance policies are governed by the same general rules which pertain to all contracts.” Boyer v. United States Fidelity and Guaranty Co., (1929) 206 Cal. 273, 274 P. 57; Hanover Insurance Company v. Carroll, (1966) 241 Cal.App.2d 558, 50 Cal.Rptr. 704; Campbell v. Allstate Insurance Company (1963) 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155. The rationale of these California cases is set forth in Campbell v. Allstate Insurance Company to the effect that:
“An insurer may assert defenses based upon a breach by the insured of a condition of the policy such as a cooperation clause, but the breach cannot be a valid defense unless the insurer was substantially prejudiced thereby. * * * Similarly, it has been held that prejudice must be shown with respect to breach of a notice clause.”
But the fallacy in Seaboard’s argument is that those cases relied upon are insurance policy cases arising out of automobile accidents, i.e., where liability is *782 sought to be imposed upon insurance companies under policies of indemnity. In such instances, California, as in most other jurisdictions including Florida, construes the indemnity policies of insurance liberally, and the element of prejudice to the insurance company is tied in with the notice provisions of the policies. This is consistent with the rule that insurance contracts are liberally construed in favor of the insured and against the insurer. 29 Am.Jur. Insurance, § 258.
Such insurance policies are known in law as “contracts of adhesion”, meaning “a standardized contract, which, imposed and drafted by the party of superior bargaining strength [insurer], relegates to the subscribing party [insured] only the opportunity to adhere to the contract or reject it”. (Emphasis supplied.) Neal v. State Farm Ins. Companies, 188 Cal.App.2d 690, 10 Cal.Rptr. 781; Artukovich v. St. Paul-Mercury Indemnity Co., 1957, 150 Cal. App.2d 312, 310 P.2d 461.
The contract involved in the instant case was not an insurance contract, and the instant case was not a suit on an insurance policy. The contract involved was an agreement for the sale or exchange of corporate stock involving two principal corporations. The warranty or indemnity provisions in such contracts have adhering thereto no such liberality toward one of the contracting parties such as in insurance contracts or other contracts of adhesion.
The California Courts treat contracts for the sale of stock, such as the one here involved, in the same category as the ordinary sale of goods or merchandise, not like insurance policies. Franck v. J. J. Sugarman-Rudolph Co., 1952, 40 Cal.2d 81, 251 P.2d 949. In such contracts, requirements as to notice are strictly enforced and the element of prejudice is not a requirement. Davidson v. Herring-Hall-Marvin Safe Co., 1955, 131 Cal.App.2d Supp. 874, 280 P.2d 549; Burkett v. Dental Perfection Company, 1956, 140 Cal.App.2d 106, 294 P. 2d 992. These cases hold that contractual provisions specifying the time for giving notice or making claim are strictly construed and failure to comply therewith is considered a breach of warranty. In fact, the provisions for notice are looked upon as conditions precedent to be enforced as written. Schwab v. Bridge, 1915, 27 Cal. App. 204, 149 P. 603; California Sav. Bank of San Diego v. American Surety Co. of New York, Cal.C.C.1898, 87 F. 118; Union Indemnity Co. v. Lang, CCA 9, 1934, 71 F.2d 901. As said by the 9th Fed. CCA in Union Indemnity:
“Nor does it matter of what value this notice was to the defendant, or whether it was of any value. In a Court of law, effect is to be given to the bargain according to its terms, and Courts of law cannot speculate upon the weight attached to one or another of the elements of an obligation. The defendant bound himself only in a given way, and can be held only by the bargain he made, at least in the form of this action.”
In the instant case, with reference to a warranty provision, the sale or exchange of Union’s stock may not be analogized to an insurance contract rather than to a sale of goods or other non-insurance transaction. The Chancellor’s determination, therefore, that there was no requirement here that defendants plead prejudice in order to set up the defense of Seaboard’s failure to give the required notice of claim for the alleged breach of warranty, was correct.
(2) Whether knowledge by defendants that Seaboard’s subsidiaries were making refunds constitutes estoppel.
This point is based upon the asserted es-toppel against defendants because they knew Seaboard’s subsidiaries were making refunds of unearned premiums to former borrowers of Union’s subsidiaries. It is also argued that because Saunders and his wife, acting on behalf of W.N.S., had knowledge of the refunds, such knowledge was imputed to and binding upon the corporate defendant, Mutual Bankers.
*783 From the record, there is some question as to whether or not, while refunds were being made to the borrowers, defendants knew of any projected claim against them by Seaboard for unreim-bursed refunds; but even assuming existence of such knowledge, this does not of itself suffice to create an estoppel from asserting the lack of written notice as affirmatively provided in the contract.
The California cases cited by Seaboard in support of its contention here merely parallel in essence the same argument made by Seaboard under the first point. See U.S.F. & G. Co. v. Church, Cal.N.D. 1952, 107 F.Supp. 683, and Meritplan Ins. Co. v. Universal Underwriters Ins. Co., 1966, 247 Cal.App.2d 451, 55 Cal.Rptr. 561; Abrams v. American Fire and Casualty Co., 32 Cal.2d 233, 195 P.2d 797. These cases are authority merely for the proposition that, in proof-of-loss cases under insurance policies, knowledge of the insured’s claim and lack of prejudice to the insurer replace the policy requirement for formal notice of claim.
Seaboard’s contention upon this point is untenable.
(3) Whether the subsidiaries were in fact contingently liable to make the refunds.
The Chancellor in his order of March 26, 1968, said that “the Court * * * is not satisfied that the alleged undisclosed liabilities were in fact contingent liabilities within the meaning of the parties’ warranty.” But in his summary final judgment entered on June 27, 1968, no further reference was made to this point. The judgment was grounded solely upon the failure of Seaboard to give the contractually required notice of its claim and that defendants were not estopped to plead such failure as a defense.
So the trial Court never has actually ruled on the instant question, which was in fact only raised by defendants in their brief replying to Seaboard’s main brief in this Court. In this state of the case, we feel we should not pass upon the point. It is unnecessary to do so anyway, because what we have hereinbefore said sufficiently disposes of the appeal.
Accordingly, the summary final judgment appealed from is affirmed.
Affirmed.
HOBSON, Acting C. J., and Mc-NULTY, J., concur.