608 So.2d 844 (1992)
MARTIN L. ROBBINS, M.D., P.A., et al., Appellants,
v.
I.R.E. REAL ESTATE FUND, Ltd., et al., Appellees.
No. 92-75.
District Court of Appeal of Florida, Third District.
October 6, 1992.
On Motion for Rehearing and/or Clarification December 8, 1992.
*845 Maland & Ross and Lauri Waldman Ross, Irwin M. Frost, Miami, for appellants.
Jeffrey C. Roth, Coral Gables, for appellees.
Before NESBITT, FERGUSON and GODERICH, JJ.
NESBITT, Judge.
Tenants of a commercial building complex appeal an adverse declaratory judgment which determined that their landlords could re-configure the complex parking lot and require the tenants to pay newly imposed parking charges. For the following reasons, the judgment of declaratory relief is reversed with directions to enter judgment favorable to the tenants.
This dispute began after the landlords restructured and re-configured the building parking area so as to prohibit ingress and egress of all users of the lot without payment of parking charges or the display of a decal showing the required monthly fees had been paid. The landlords demonstrated the purpose of the re-configuration was, at least in part, to promote greater parking availability to the tenants and to afford them greater security. It seems that due to the shortage of parking space at nearby Baptist Hospital, employees of the hospital had started using previously free parking space at the building complex. The landlords further demonstrated that the open parking area had been used by motorists to avoid a corner traffic signal and unrestrained access to the lot had permitted criminal activity. Automobile tires had been slashed; car windows had been smashed with attendant theft; and tenants and their visitors had reported vandalism to their cars while parked in the open lot.
The landlords point to the provisions in the tenant leases which "reserve the right at any time to make alterations to the building; [and] construct other buildings or improvements in the buildings or common areas... ." Further, the landlords claimed authorization for the restructuring charges came from lease clauses which authorized the landlords to adopt "reasonable rules and regulations ... governing the use of the parking areas, walks and driveways... ." Presently, tenants do not deny the landlords' right to re-configure the parking lot. Instead, their claim is that the landlords had no authority to commence charging for parking in the newly configured lot. The landlords claim that because the leases are otherwise silent as to the authority to impose parking charges, section 4.2 of the leases authorize levy for these charges. That provision provides:
Section 4.2 Definition Of Operating Expenses
The term "Operating Expenses" shall mean (1) all costs of management, operation and maintenance of the Office Complex, including, without limitation, wages, salaries and payroll burden of employees, janitorial, maintenance, guard and other services, building management office rent or rental value, power, fuel, water, waste disposal, landscaping care, premiums for liability, fire, hazard and other property related insurance, parking area care, advertising and promotion, fees for energy saving programs, administrative costs, including management fee, and (2) the cost (amortized over such reasonable period as Landlord shall determine) of any capital improvements made to the Building by Landlord after the date of this Lease that reduce the Operating Expenses, or made to the Building by Landlord after the date of *846 this Lease that are required under any governmental law or regulation that was not applicable to the Building at the time it was constructed; provided, however, that Operating Expenses shall not include real property taxes, depreciation on the Building, costs of tenant improvements, real estate brokers' commissions, interest and capital items other than those referred to in clause (2) above.
It is undisputed that prior to the re-configuration no parking charges had ever been levied against the appellant tenants, their employees, or business invitees. Moreover, appellants submitted evidence that the absence of parking charges was a material inducement in their original execution of the leases.
Where a contract is silent as to a particular subject, a court should not, under the guise of construction, impose on parties contractual duties which they themselves omitted when entering into the contract. BMW of North America, Inc. v. Krathen, 471 So.2d 585, 587 (Fla. 4th DCA 1985), review denied, 484 So.2d 7 (Fla. 1986). The intention of the parties, as reflected by the language used and objects to be accomplished is a polestar of contract interpretation. Acceleration Nat'l Serv. Corp. v. Brickell Finan. Servs. Motor Club, Inc., 541 So.2d 738 (Fla. 3d DCA), review denied, 548 So.2d 662 (Fla. 1989).
In the present case, the absence of a lease provision authorizing the landlords to impose parking charges cannot be regarded as mere oversight in the leases for such a sophisticated building complex. It is unassailable that the leases simply do not authorize the landlords to impose parking charges, and in fact, no charges were made until the re-configuration. As will be observed from reading section 4.2, quoted above, the landlords' only authority to require tenants to contribute generally to such parking is with respect to "parking area care." Because free parking was a given and the leases were silent with respect to the authority to impose parking charges and were drafted by the landlords, to require the tenants to pay parking charges under such circumstances constitutes a judicial reformation of an unambiguous contract provision. Azalea Park Utils., Inc. v. Knox-Florida Dev. Corp., 127 So.2d 121 (Fla. 2d DCA 1961).
Moreover, the landlords' vigorous argument that "parking charges" only constitute one of many kinds of operating expenses under section 4.2 likewise fails. A "charge" produces an intake of funds, while an "expense" requires an outlay of funds. One creates a debit and the other a credit. To argue that parking charges are therefore expenses not only ignores the wording of the leases but also ignores basic accounting principles.
Finally, the tenants also challenge the trial court's award of attorney's fees to the landlords. We conclude that neither party is entitled to attorney's fees under the instant circumstances. The cases authorizing fees to the prevailing party for litigation arising out of the enforcement of leases is not applicable here since both parties filed for declaratory relief. Florida decisions which have considered the question have concluded that such actions are not for "enforcement" so as to justify a fee award. See Dade Sav. & Loan Ass'n v. Broks Center Ltd., 529 So.2d 775 (Fla. 3d DCA 1988); see also Holmes Regional Enters. v. Advanced Medical Diagnostics Corp., 582 So.2d 822 (Fla. 5th DCA 1991); Ocala Warehouse Invs., Ltd. v. Bison Co., 416 So.2d 1269 (Fla. 5th DCA 1982).
For the foregoing reasons, the judgment and the order awarding fees are reversed with directions to enter judgment declaring the landlords are not entitled to impose and collect parking fees from tenants, their employees, or visitor-business invitees. The order awarding fees is also reversed.
Reversed and remanded.

ON MOTIONS FOR REHEARING AND/OR CLARIFICATION
NESBITT, Judge.
On motion for rehearing and/or clarification, the landlords request that this court declare as operating expenses the costs of manning the booths and collecting *847 the charges under dispute. Then, the landlords reason, those costs can be passed on to tenants, as per Section 4.2. Having concluded that charges for tenant, employee, and guest vehicles entering the lot were never provided for in the instant leases, we find, a fortiori, the expenses for maintaining salaried personnel to collect these unauthorized charges cannot be termed operating expenses and cannot be passed on to tenants.
The motion is denied.