273 N.J. Super. 467 (1993)
642 A.2d 438
HARVARD INDUSTRIES, INC.; HARMAN AUTOMOTIVE, INC.; HARMAN AUTOMOTIVE  PUERTO RICO, INC.; THE KINGSTON-WARREN CORPORATION; HAYES-ALBION CORPORATION; HARVARD TRANSPORTATION CORPORATION; TRIM TRENDS, INC.; AND DECKERVILLE DIE FORM CO., PLAINTIFFS,
v.
AETNA CASUALTY & SURETY COMPANY; AFFILIATED FM INSURANCE COMPANY; ALLSTATE INSURANCE COMPANY; AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY (FORMERLY KNOWN AS GREAT AMERICAN SURPLUS LINES INSURANCE COMPANY); AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY; AMERICAN MOTORISTS INSURANCE COMPANY; CALIFORNIA UNION INSURANCE COMPANY; CHARTER OAK FIRE INSURANCE COMPANY; CHICAGO INSURANCE COMPANY; COLUMBIA CASUALTY COMPANY; CONTINENTAL CASUALTY COMPANY; CONTINENTAL INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; FIRST STATE UNDERWRITERS AGENCY OF NEW ENGLAND CORPORATION; GREAT AMERICAN INSURANCE COMPANY; HARBOR INSURANCE COMPANY; HARTFORD ACCIDENT AND INDEMNITY COMPANY; HIGHLANDS INSURANCE CO.; HOME INDEMNITY COMPANY; HOME INSURANCE COMPANY; H.S. WEAVER (UNDERWRITING) AGENCIES, LIMITED; INSCO LIMITED; INSURANCE COMPANY OF NORTH AMERICA; INTEGRITY INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION; NORTH STAR REINSURANCE CORPORATION; NORTHWESTERN NATIONAL INSURANCE CO.; ST. PAUL FIRE AND MARINE INSURANCE COMPANY; SAFETY MUTUAL CASUALTY COMPANY; THE TRAVELERS INDEMNITY COMPANY; TRAVELERS INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; UNDERWRITING MEMBERS OF LLOYDS OF LONDON; UNITED STATES FIRE INSURANCE COMPANY; ZURICH INSURANCE COMPANY; AND DOES 1-500, DEFENDANTS.
Superior Court of New Jersey, Law Division Civil Part Monmouth County.
Decided November 18, 1993.
*471 Martin F. Siegal, for plaintiffs (Farer Siegal Fersko, attorneys).
S. Robert Allcorn, for defendant American Empire Surplus Lines Insurance Company (Rabner, Allcorn & Meislik, attorneys).
Daniel I Schlessinger, Jan M. Michaels, for defendant American Empire Surplus Lines Insurance Company (Lord, Bissell & Brook, attorneys).
Elizabeth Williams, for defendant Aetna Casualty and Surety Company (Harwood Lloyd, attorneys).
Shanley & Fisher, for defendants The Travelers Indemnity Co. and Charter Oak Fire Insurance Co.
FISHER, J.S.C.
This action concerns the interpretation and application of what is known in the insurance industry as the "absolute pollution exclusion." Such an exclusion, contained in a policy of insurance *472 issued by defendant American Empire Surplus Lines Insurance Company ("American Empire") to plaintiffs, gave rise to the present dispute. This absolute pollution exclusion derives its name from the fact that it does not limit its applicability to claims arising from "sudden and accidental" events as in a clause recently considered by our Supreme Court in Morton International, Inc. v. General Accident Insurance Company of America, 134 N.J. 1, 629 A.2d 831 (1993).
The issues before this court as to the scope of the pollution exclusion are of novel impression in New Jersey. The parties have referred to a number of unreported decisions concerning the "absolute pollution exclusion,"[1] as well as one reported decision,[2] by the courts of this state. Those decisions, however, do not focus on the precise arguments raised by plaintiffs in seeking to avoid the effect of the exclusion under the circumstances of this case.[3]

I

INTRODUCTION
On January 15, 1993, plaintiffs Harvard Industries, Inc., and its related entities,[4] commenced an action in this court seeking insurance coverage from approximately forty insurance carriers for a variety of occurrences described in the complaint.
*473 American Empire has moved for summary judgment, contending that the "absolute pollution exclusion" contained in its policy of insurance bars coverage of Harvard's claims. To resolve this motion, the court must consider the manner in which our courts interpret insurance policies, the relevant language of the policy, and the nature of the claims for which Harvard seeks coverage from American Empire.[5]

II

THE JUDICIAL APPROACH TO THE INTERPRETATION OF INSURANCE POLICIES
It is often stated that insurance contracts must be liberally construed in favor of a policyholder, and strictly construed against the insurer, in order to provide the protection for which the insured bargained. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 41, 161 A.2d 717 (1960). In this regard, insuring clauses are to be viewed liberally in favor of coverage and exclusions are to be strictly construed. See Sinopoli v. North River Ins. Co., 244 N.J. Super. 245, 250, 581 A.2d 1368 (App.Div. 1990). If the words of the policy are ambiguous, or the policy's language uncertain, then the policy will be construed in the insured's favor. Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234, 243, 333 A.2d 293 (App.Div. 1975). This does not mean, however, that a court should scour a policy in an effort to locate an ambiguity or contort the language of the policy to create uncertainty. Sinopoli, supra, 244 N.J. Super. at 250, 581 A.2d 1368.
Since insurance contracts are ordinarily drafted and prepared by an insurer "guided by his own interests and goals in the transaction," Simses v. North American Co. for Life and *474 Health Ins., 175 Conn. 77, 394 A.2d 710, 714 (1978), they are often viewed as "contracts of adhesion." Such disparate bargaining power has prompted our courts to construe such contracts in the light most favorable to the insured since the policy is often offered to the insured on a take-it-or-leave-it basis. See Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7-8, 170 A.2d 800 (1961). On the other hand, if the insured is a sophisticated business entity with substantial bargaining power, it does not necessarily follow that the insured is entitled to have all doubts and ambiguities construed in its favor. See McNeilab, Inc. v. North River Ins. Co., 645 F. Supp. 525, 546 (D.N.J. 1986), aff'd o.b. 831 F.2d 287 (3d Cir.1987); Erie County v. American States Ins. Co., 573 F. Supp. 479, 487 (W.D.Pa. 1983), aff'd 745 F.2d 45 (3d Cir.1984).
Although the arguments before the court do not necessitate an assessment of the parties' bargaining power, what is before the court suggests that it may be unlikely that the doctrine of contra proferentem will apply if an ambiguity can be found in any of the policies in question[6]. In any event, because the arguments concerning the scope and application of the absolute pollution exclusion arise by way of a motion for summary judgment, and because the movant has not suggested that the parties possessed equal bargaining power, the court will construe any ambiguities in the policy in the light most favorable to the insured, even though the present record may suggest otherwise.[7]

*475 III

THE POLICY IN QUESTION

A. The Absolute Pollution Exclusion
Harvard's motion is based upon what has been referred to by the parties as the absolute pollution clause. That clause states:
It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:
1. to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
(a) at or from premises owned, rented or occupied by the Named Insured;
(b) at or from any site or location used by or for the Named Insured or others for the handling, storage, disposal, processing or treatment of waste;
(c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the Named Insured or any person or organization for whom the Named Insured may be legally responsible; or
(d) at or from any site or location on which the Named Insured or any contractors or subcontractors working directly or indirectly on behalf of the Named Insured are performing operations:
(i) if the pollutants are brought on or to the site or location in connection with such operations; or
(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
2. to any loss, cost or expense arising out of any governmental direction or request that the Named Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
It is further understood and agreed that [American Empire] will not be liable or responsible to defend the insured in any action or litigation for any pollution or contamination related allegations.
Subsection (1) of the absolute pollution exclusion expressly excludes only "bodily injury" or "property damage." Harvard asserts that the claims for which it seeks coverage do not fit those *476 categories and the exclusion is therefore inapplicable. On the other hand, American Empire asserts that they are either "property damage" claims or claims that fall within subsection (2) of the exclusion. Before attaining an understanding of the absolute pollution exclusion, it is essential to first understand the terms contained within it. The definitions of these terms necessarily govern the scope of the absolution pollution exclusion.

B. Defining The Types Of Claims Referred To In The Policy
The insuring clause of the policy refers to three types of claims which American Empire agreed to cover: "personal injury," "property damage" and "advertising injury" claims. Only the first two of these claims are relevant here. The policy defines these terms.
"Personal injury" is defined as including "(a) bodily injury; ... [and] (d) wrongful entry or eviction, or other invasion of the right of private occupancy...."[8] Since the phrase "bodily injury" is not only included within the phrase "personal injury" but is also utilized independently in the absolute pollution exclusion, the definition of "bodily injury" as set forth in the policy is also of interest. It is defined as meaning "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." Policy at p. 8.
"Property damage" means "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." Policy at 10.

*477 C. A Comparison of The Policy Definitions and The Absolution Pollution Exclusion

In ascertaining whether American Empire has excluded coverage for the claims asserted against Harvard, it is helpful to view separately subsections (1) and (2) of the absolute pollution exclusion.

1. Subsection (1)
Harvard does not, indeed cannot, dispute that if the claims for which it seeks coverage fall within the definitions of "bodily injury" or "property damage," its claims are excluded. The scope of the exclusion set forth in subsection (1) is certainly broad enough to otherwise include the claims in question and Harvard does not assert any other means of avoiding the effect of the exclusion. Harvard's contention, however, is that some or all of the claims referred to in its complaint are claims for "personal injury" and, specifically, claims asserting "wrongful entry or eviction, or other invasion of the right of private occupancy."[9]
The "personal injury" claims that have been asserted against it, Harvard argues, are in the form of trespass or nuisance claims. Harvard alleges that such actions fall within the definition of "personal injury" as a "wrongful entry or eviction, or other invasion of the right of private occupancy." Harvard asserts that our courts have held that one who allows environmental contamination to migrate onto the property of another has committed a *478 trespass (State, Dept. of Environ. Protection v. Ventron Corp., 94 N.J. 473, 468 A.2d 150 (1983)) or created a nuisance (Russell-Stanley Corp. v. Plant Industries, Inc., 250 N.J. Super. 478, 595 A.2d 534 (Ch.Div. 1991)), and argues that such claims constitute "an entry" or "other invasion of the right of private occupancy."
Additionally, Harvard urges that Titan Holdings Syndicate v. City of Keene, N.H., 898 F.2d 265 (1st Cir.1990), and Pipefitters Welfare Educ. Fund v. Westchester Fire, 976 F.2d 1037 (7th Cir.1992), support a loose and broad definition of "personal injury" that encompasses trespass and nuisance claims. Those cases are somewhat at odds with each other. Pipefitters notes that the "other invasion" language is somewhat "general and elastic," but found that that language should be interpreted as "encompassing only conduct of the same general type as eviction and wrongful entry." 976 F.2d at 1041. From this the Pipefitters court held that a claim sounding in trespass fell within the definition of "personal injury." Titan also dealt with the "other invasion" language but held, on the strength of New Hampshire law (which governed the substantive issues in that diversity case), that the "other invasion" language "lacks precise definition." 898 F.2d at 272 (citing Town of Epping v. St. Paul Fire & Marine Ins., 122 N.H. 248, 444 A.2d 496 (1982)). In light of its view that the "other invasion" language is ambiguous, Titan held that a nuisance claim (based on the discharge of "noxious odors, noise and light" from the insured's sewage treatment plant) was included within the "personal injury" definition of the policy based on the extrinsic evidence provided as to the parties' intent. 898 F.2d at 272-273.
The plain language of the definition of "property damage," examined in the light of Ventron and Russell-Stanley, demonstrates that claims arising from the dispersal of contaminants that unreasonably or substantially interfere with a private[10] property *479 owner's occupancy, such as a trespass or a nuisance, are not excluded by subsection (1) of the absolute pollution exclusion. Accord Pipefitters, supra.
A trespass is an unauthorized entry onto the property of another. The entry may be momentary (State v. Wouters, 71 N.J. Super. 479, 485, 177 A.2d 299 (App.Div. 1962)) or may only brush the boundary (Hennessy v. Carmony, 50 N.J. Eq. 616, 618, 25 A. 374 (Chan. 1892)). As Blackstone stated, "every man's land is in the eye of the law enclosed." Any entry or breach of that enclosure is a trespass and is actionable even if the damage is not appreciable. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 45, 477 A.2d 1224 (1984). Such an action fits squarely within the definition of "personal injury" contained in the policy and, for that reason, is not excluded by the absolute pollution exclusion.
Justice Francis observed in Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448, 149 A.2d 599 (1959), that the law "has never undertaken to define all the possible sources of annoyance and discomfort which would justify" the finding of a nuisance. The essence of a nuisance is "an unreasonable interference with the use and enjoyment of land." Id. Again, the "other invasion" language of the policy unambiguously encompasses claims against the insured for maintaining a private nuisance.
Accordingly, if the claims asserted against Harvard are in the nature of trespass or nuisance claims, as Harvard asserts, they are not excluded under subsection (1).

*480 2. Subsection (2)

American Empire emphasizes subsection (2) of the absolute pollution exclusion as a bar to coverage of the claims brought against Harvard. Harvard had little to say of subsection (2) in its written opposition to the motion, but argued on the motion's return date that subsection (2) is also limited to claims for "bodily injury" and "property damage." To reach such a conclusion, however, the court would be required to rewrite the policy in question.
The preamble to subsections (1) and (2) states that the parties "agreed that the [prior] exclusion relating to [pollution, etc.] is replaced by the following." Subsection (1), as noted above, is then defined as being limited to claims for "bodily injury or property damage." Subsection (2), however, makes no reference to "bodily injury or property damage," but rather sets forth the parties' intention to exclude from coverage "any loss, cost or expense arising out of any governmental direction or request that [Harvard] test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants" (emphasis added). Unlike subsection (1), this subsection makes no attempt to classify the types of claims or injuries to be excluded.
Harvard's suggestion that this court should interpret subsection (2) to apply only to "bodily injury or property damage," or at least find subsection (2) to be ambiguous (thus giving rise to the engaging in discovery as to extrinsic evidence of intent which, Harvard claims, might support its interpretation) is simply belied by the express terms utilized by the parties. The modifying phrase "bodily injury or property damage" is contained only within the bounds of subsection (1). To allow that phrase to enter or otherwise invade subsection (2) would require this court to excise the word "any" from subsection (2). The word "any" is unambiguous and refers to all claims which may be brought so long as the remaining provisions of subsection (2) are met. Of course, the word "any" encompasses all claims, without limitation. In the context of subsection (2), then, it includes all such claims *481 that arise from a governmental direction or request that Harvard clean up or remove pollutants.
Ambiguity exists where "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo v. Stone-E-Brick Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979). There is nothing at all confusing about the wording of subsection (2). Any contrary interpretation would constitute an "untenable distortion of the policy language." Hartford Acc. & Indem., supra, 98 N.J. at 28, 483 A.2d 402. To agree with the strained interpretation urged by Harvard would require this court to excise the word "any" from subsection (2); this court is not empowered to rewrite the parties' agreement. See, Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511, 525, 193 A.2d 217 (1963).

D. Summary
In summary, Harvard has referred the court to no ambiguity in the absolute pollution exclusion. It absolutely excludes all claims which may be asserted against Harvard arising from a governmental direction to clean up or remove pollutants; and it excludes from coverage all "bodily injury" and "property damage" claims arising out of the "actual, alleged or threatened discharge, dispersal, release or escape of pollutants." It does not, however, exclude "personal injury" claims, i.e., claims which allege an entry, eviction or invasion of the right to private occupancy of property.
There is no ambiguity in the cited provisions of the policy that would bar the application of summary judgment. Unless there are disputed facts as to the scope of the claims for which Harvard seeks coverage, the matter may be properly resolved by way of summary judgment. See, e.g., Michaels v. Brookchester, Inc., 26 N.J. 379, 387, 140 A.2d 199 (1958); Trucking Employees of North Jersey, etc. v. Vrablick, 177 N.J. Super. 142, 425 A.2d 1068 (App. Div. 1980). Accordingly, the court must examine each of the claims to determine whether, beyond any factual dispute, they are excluded.

*482 IV

THE CLAIMS FOR WHICH HARVARD SEEKS COVERAGE
A review of Harvard's opposing submission demonstrates that nearly all of the claims for which it seeks coverage are excluded by subsection (2) of the absolute pollution exclusion.

A. The Elvins, Missouri; Gnaddenhutten, Ohio; and Vega Alta, Puerto Rico Sites
The claims brought against Harvard regarding the Elvins, Missouri; Gnaddenhutten, Ohio; and Vega Alta, Puerto Rico, sites have either arisen from or are the result of direct action by the Environmental Protection Agency ("EPA") under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"). Pb at 11. The complaint filed by Harvard concedes this to be so. See, Complaint, ¶ s 73 and 74 (as to Elvins, Missouri); ¶ s 76-80 (as to Gnaddenhutten, Ohio); and ¶ s 82-85 (as to Vega Alta, Puerto Rico). Thus, these claims are clearly excluded by subsection (2).

B. The New Jersey and Michigan Sites
There is also no doubt that the claim for coverage regarding the Union, New Jersey (Complaint, ¶ s 70-71); Albion and Jackson, Michigan (Complaint, ¶ s 97-99); and Deckerville, Michigan (Complaint, ¶ 100-102), sites also fall within subsection (2) of the absolute pollution exclusion. The allegations of the complaint filed by Harvard clearly set forth the fact that the "loss[es], cost[s] or expense[s]" Harvard alleges it has or will incur arise out of governmental directions.
With regard to the Union, New Jersey, site, Harvard alleges that its damages arise as a result of an order and the requirements of the New Jersey Department of Environmental Protection and Energy. Complaint, ¶ 72. As for all of the Michigan sites referred to above, Harvard alleges that it will suffer losses as a direct result of action taken by the Michigan Department of *483 Natural Resources (Complaint, ¶ 92, 99, 102). Accepting the allegations of the complaint as true, the Union, New Jersey and all of the Michigan sites are excluded by subsection (2) of the absolute pollution exclusion.

C. The Newmarket, New Hampshire Site
The allegations of the complaint regarding the Newmarket, New Hampshire, site do not, however, demonstrate that it is a claim that arises out of a "governmental direction." It is alleged that the Town of Newmarket "is currently under an order from the New Hampshire Department of Environmental Services (`NHDES') to close and conduct remedial activities at the Newmarket, New Hampshire Site." Complaint, ¶ 89. This directive, however, is somewhat different from the New Jersey and Michigan claims. Here, the Town of Newmarket, not Harvard, has received the governmental direction. Although subsection (2) contains broad language, its breadth excludes only claims wherein the named insured has received the governmental direction. Subsection (2) does not exclude a claim against an insured by one, other than the insured, who has received a governmental direction to remove contaminants. As the Newmarket claim is presently understood, it does not appear that Harvard has been directed by the NHDES to remove contaminants.
Nevertheless, coverage for this claim is excluded by subsection (1). As stated above, a claim is not a claim for "personal injury" (and thus beyond the reach of subsection (1)) unless there is alleged an invasion or interference with the right of private occupancy. That cannot be so when the claim is asserted by a municipality or other governmental entity since there is no private ownership right vested in a municipal body. See Morton International, Inc. v. General Acc. Ins. Co., 266 N.J. Super. 300, 629 A.2d 895 (App.Div. 1991), aff'd 134 N.J. 1, 629 A.2d 831 (1993).

D. The St. Louis, Missouri Site
Harvard seeks coverage for an action filed against it by L.P.L. Realty in the United States District Court for the Eastern District *484 of Missouri. In the complaint, Harvard alleges that it sold the St. Louis site to L.P.L. Realty and that L.P.L. Realty now seeks damages because of the alleged discharge of pollutants prior to that transaction.
At oral argument, American Empire essentially conceded for purposes of its motion for summary judgment that this action does not arise from a governmental direction, but nonetheless asserts that L.P.L. Realty's claim is excluded by subsection (1) of the absolute pollution exclusion.
An insurer's obligation is normally ascertained by a comparison of the policy and the complaint filed against the insured; coverage is found if the sustaining of the complaint would give rise to an obligation on the part of the insurer. See Hartford Acc. & Indem. Co., supra, 98 N.J. at 21, 483 A.2d 402. L.P.L. Realty's complaint states that the alleged contamination of the St. Louis site by Harvard prevented it from transferring that property to the Land Reutilization Authority of the City of St. Louis pursuant to an agreement to sell dated July 14, 1989. See, Certification of Jan M. Michaels (August 16, 1993), Exhibit C, ¶ s 12-15. Based upon the fact that subsection (1) does not exclude claims that assert an invasion of the right to private occupancy, it cannot be said, as a matter of law, that L.P.L. Realty has not made such a claim. Certainly, an inability to convey title of real property as a result of the presence of hazardous substances can be the result of an invasion of, or injury to, the right to private occupancy of that property. Thus, on the present record, it cannot be said that subsection (1) of the absolute pollution exclusion bars coverage for the L.P.L. Realty claim.

V

CONCLUSION
Based on the foregoing, American Empire's motion for summary judgment, insofar as it seeks dismissal of the claims for coverage concerning all sites except the St. Louis, Missouri site, *485 shall be granted; as for the St. Louis, Missouri site, the motion will be denied.
Counsel for American Empire shall submit an appropriate order under the 5-day rule.
NOTES
[1] Mearle Corp. Inc. v. Fireman's Fund Ins. Co., Docket No. UNN-L-5946-90 (Law Div. 1991); Rockland Chemical Co. v. Hartford Ins. Group, Docket No. ESX-L-1136-89 (Law Div. 1991); Peschel v. High Point Sanitation Co., Docket No. L-81828-85 (Law Div. 1987); Kimber Petroleum Corp. v. Travelers Indemnity Co., Docket No. UNN-L-6990-90 (1992); Biddle Sawyer Corp. v. Fireman's Fund Ins. Co., Docket No. MON-L-5219-91 (Law Div. 1992).
[2] U.S. Bronze v. Commerce & Ind., 259 N.J. Super. 109, 611 A.2d 667 (Law Div. 1992).
[3] Only the Biddle Sawyer matter referred to in n. 1 above discusses the argument raised by plaintiffs herein, but that three-paragraph unreported decision provides little analysis of those issues.
[4] The plaintiffs will be referred to in this opinion collectively as "Harvard."
[5] Only American Empire has moved for summary judgment. While defendants Aetna Casualty & Surety Company, The Travelers Insurance Company and Charter Oak Fire Insurance Company have advised of their "support" for American Empire's motion for summary judgment, neither they nor any other defendant has moved for summary judgment.
[6] The complaint reveals that Harvard has many business operations across the country. Harvard may not be the type of consumer of an insurance policy that our courts intended to protect through the use of contra proferentem.
[7] While the claims for which Harvard seeks coverage occurred in a variety of jurisdictions other than New Jersey (i.e., Puerto Rico, Michigan, Ohio, Missouri and New Hampshire), there has been no argument that the substantive law of any state other than New Jersey should be applied to these disputes. Counsel for Travelers and Charter Oak anticipated the issue in their letter-memorandum, but correctly pointed out that the movant and opponent of the present motion have not indicated any conflict between New Jersey law and the law of any other interested state. Because no conflict has been presented to the court, and the parties to the motion have framed their arguments on the assumption that New Jersey law would apply, the issues will be resolved in accordance with New Jersey substantive law. See, McNeilab, supra, 645 F. Supp. at 529 n. 5.
[8] Other types of claims included within the policy's definition of "personal injury" are not relevant to the issues at hand.
[9] Harvard relies heavily on the fact that its complaint against the insurers herein describes the underlying claims as "personal injuries," and that its allegations are sufficient to avoid the effect of subsection (1). Harvard's pleaded description of those claims, however, is not relevant. What is germane, and often highly critical, are the allegations which have been asserted against Harvard for which Harvard seeks coverage. See Ohio Casualty Ins. v. Flanagin, 44 N.J. 504, 514, 210 A.2d 221 (1965); Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 23, 483 A.2d 402 (1984). To the extent available, the pleadings asserted against Harvard will be considered in ascertaining the nature of the claims for which Harvard seeks coverage. But Harvard's reliance upon its own pleadings is certainly insufficient to avoid summary judgment.
[10] The phrase "wrongful entry or eviction" contained in the policy's definition of "personal injury" refers to claims made against Harvard for wrongs suffered by private property owners. The last phrase of that part of the definition is a "catch-all" which would include all other "invasions of the right of private occupancy" more specifically referred to above it (emphasis added). This catch-all phrase defines and summarizes that which precedes it in that subsection of the exclusion. The application of the familiar rule of construction  noscitur a sociis  dictates that the phrase "wrongful entry or eviction" is limited to such wrongs suffered by private property owners. See, e.g., Germann v. Matriss, 55 N.J. 193, 221, 260 A.2d 825 (1970); Josefowicz v. Porter, 32 N.J. Super. 585, 591, 108 A.2d 865 (App.Div. 1954).