658 So.2d 543 (1995)
PASTEUR HEALTH PLAN, INC., a domestic health maintenance organization, Appellant,
v.
Miriam SALAZAR, Appellee.
No. 94-738.
District Court of Appeal of Florida, Third District.
May 3, 1995.
Rehearing Denied August 30, 1995.
Stabinski & Funt, Hicks, Anderson & Blum and Bambi G. Blum, Miami, for appellant.
Floyd Pearson Richman Greer Weil Brumbaugh & Russomanno and Robert J. Fiore, Miami, for appellee.
Michael R. Presley, Chartered, Boca Raton, for Variety Children's Hosp., as amicus curiae.
Before HUBBART, JORGENSON, and GERSTEN, JJ.
JORGENSON, Judge.
This is an appeal by the insurer, Pasteur Health Plan, Inc., of a final summary judgment on liability in favor of the insured subscriber, Miriam Salazar. For the following reasons, we affirm.
The non-final order under review rules against Pasteur on all its affirmative defenses. The order renders the insurer liable to the insured under an HMO medical insurance plan to pay for certain hospital and other medical expenses arising from a traffic accident involving Mrs. Salazar's son, who also was covered under the medical plan.
*544 Mrs. Salazar's son was riding as a passenger on a three-wheel, Honda ATC (All Terrain Cycle) driven by another party on a two-lane public street in Miami, Florida. The front tire blew out, and the driver lost control of the ATC. It left the roadway and smashed into a tree. Mrs. Salazar's son was critically injured in the accident and later died from those injuries. Mrs. Salazar was a subscriber of Pasteur's HMO health plan that contained the following exclusion: "Care for injuries or conditions that result from motor vehicle accidents, regardless of whether the member is the driver, passenger, or a pedestrian and regardless of whether the member has paid a fare, and boating accidents."
After Mrs. Salazar's son was admitted to Variety Children's Hospital, Pasteur denied coverage based on the above exclusion and later reasserted the denial as an affirmative defense to a crossclaim filed by Mrs. Salazar in an action brought by Variety against both Salazar and Pasteur.[1] We affirm the trial court's order, and hold that Pasteur cannot abandon its duty to its subscribers simply by relying on its own unspoken and unwritten interpretation of an ambiguous provision in a contract of adhesion that Pasteur itself drafted.
Although Pasteur's policy does not define "motor vehicle," the trial court found that the term did not include the ATC that was involved in this tragic case. The trial court examined the five sections of the Florida Statutes that define "motor vehicle" and determined, when construed in pari materia, that a three-wheeled vehicle that is not licensed, is not designed to run on the roadways of the State and is not required to carry insurance, is not a motor vehicle under the laws of this State.
The appellant, in arguing before this court, employs what can only be described as circular reasoning. Pasteur argues that because an ATC is a motor-driven vehicle, it is in fact an excluded "motor vehicle." Pasteur's argument defies every principle of contract and insurance law. When a contract is silent as to a term, as this contract is, a court should not remedy the deficiency by divining from its crystal ball the drafter's intent. Robbins v. I.R.E. Real Estate Fund, Ltd., 608 So.2d 844, 846 (Fla. 3d DCA 1992) ("Where a contract is silent as to a particular subject, a court should not, under the guise of construction, impose on parties contractual duties which they themselves omitted when entering into the contract."), rev. denied, 620 So.2d 761 (Fla. 1993). There is nothing within the four corners of the contract to support the proposition that Pasteur "meant" to limit its liability for injuries associated with accidents involving ATCs.
This contract also bears the hallmark of a contract of adhesion. Pasteur was in a strong bargaining position and Mrs. Salazar was only in a position to "take-it-or-leave-it." Harvard Indus., Inc. v. Aetna Casualty & Sur. Co., 273 N.J. Super. 467, 642 A.2d 438, 441 (Law Div. 1993). "Such insurance policies are known in law as `contracts of adhesion,' meaning `a standardized contract, which, imposed and drafted by the party of superior bargaining strength [insurer], relegates to the subscribing party [insured] only the opportunity to adhere to the contract or reject it.'" Seaboard Fin. Co. v. Mutual Bankers Corp., 223 So.2d 778, 782 (Fla. 2d DCA 1969) (emphasis in original) (citations omitted). No Florida court has specifically found that a health maintenance organization contract is a contract of adhesion; however, HMO contracts are sufficiently analogous to health insurance contracts to make that finding. "Although we realize that HMOs are not (traditionally defined) insurance companies, we believe that the same contract construction rules apply." United States Fidelity & Guar. Co. v. Group Health Plan of Southeast Michigan, 131 Mich. App. 268, 345 N.W.2d 683, 685 n. 1 (1983) (determining that "[a]mbiguities in an insurance contract are liberally construed in the insured's favor"); see also Jones v. Crown Life Ins. Co., 86 *545 Cal. App.3d 630, 150 Cal. Rptr. 375 (1978) (group health insurance plan was a contract of adhesion because there was no parity of bargaining strength); Madden v. Kaiser Found. Hosps., 17 Cal.3d 699, 131 Cal. Rptr. 882, 552 P.2d 1178 (1976) (establishing three-part test for determining when health insurance contract is a contract of adhesion).
Florida courts have long held that all ambiguities in insurance contracts, as contracts of adhesion, should be construed in the light most favorable to the insured. Firemans Fund Ins. Co. of San Francisco, Cal. v. Boyd, 45 So.2d 499, 501 (Fla. 1950) ("[a] contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous."), Mitchel v. Cigna Property & Casualty Ins. Co., 625 So.2d 862, 864 (Fla. 3d DCA 1993) ("insurance policies in general, and exclusions in particular, are interpreted strictly against the carrier"). See also Stuyvesant Ins. Co. v. Butler, 314 So.2d 567 (Fla. 1975). Thus, any ambiguities and omissions should be construed in favor of Mrs. Salazar. If Pasteur had intended to exclude injuries that occurred as the result of an ATC accident, they had every opportunity to say so explicitly. They have no cause now to complain because of their own oversight.[2]
Even if the court interprets the exclusion clause in light of the Florida Statutes, as the trial court did, Mrs. Salazar would prevail. The Florida Statutes make it clear that the term "motor vehicle" does not encompass every "motor-driven" vehicle. Even section 316.003(21), Florida Statutes (1993), the traffic statute relied upon by appellant, notes that a moped  a motor-driven vehicle  is not a motor vehicle. More persuasive in interpreting this contract is the definition of a motor vehicle in the statutes dealing with motor vehicle and casualty insurance contracts: "`Motor vehicle' means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of this state. ..." § 627.731, Fla. Stat. (1993) (emphasis added); see also §§ 324.021, 320.01, Fla. Stat. (1993). A three-wheeled ATC that is not required to be licensed does not qualify as a motor vehicle.
Also assuming, arguendo, that the purpose of the motor vehicle exclusion clause is to limit liability in situations that are covered by motor vehicle insurance, as the appellant suggests, then clearly an ATC does not fall within the exception. Unlike cars, trucks and other motor vehicles, ATCs are not required to be insured. The only statute that deals specifically with all-terrain vehicles merely requires that children under the age of 16 wear a safety helmet and that notice be given of all accidents that result in death or serious injury. § 316.2074, Fla. Stat. (1993). To hold that ATC injuries are excluded under Pasteur's HMO health plan undermines the very rationale the appellant has ascribed to its motor vehicle exclusion clause. It also leaves Mrs. Salazar without the benefit of health coverage she thought she purchased.
Because the contract is ambiguous and to find otherwise would be a grave injustice, the motor vehicle exclusion clause in the Pasteur contract cannot be interpreted to encompass injuries caused as the result of an ATC accident.
The trial court properly rejected Pasteur's remaining affirmative defenses. After the trial court ruled that the motor vehicle exclusion did not apply to the ATC accident, it granted Pasteur leave to amend its answer to plead other coverage defenses. Pasteur waived those defenses by failing to raise them in a timely fashion. See Wegener v. International Bankers Ins. Co., 494 So.2d 259 (Fla. 3d DCA 1986) (improper repudiation of coverage results in waiver of right to insist on insured's compliance with conditions precedent to coverage), rev. denied, 504 So.2d 767 *546 (Fla. 1987). In sum, we affirm the order of summary judgment in its entirety.
AFFIRMED.
NOTES
[1] Variety, as assignee of Mrs. Salazar, or alternatively as third party beneficiary, filed the main action against Pasteur. In that same action, Variety also sued Salazar for payment of her son's medical expenses. Salazar crossclaimed against Pasteur for breach of contract and declaratory relief. This appeal from the summary judgment on liability arose in the context of Salazar's crossclaim against Pasteur.
[2] Pasteur often seems more interested in its own bottom line than in the welfare of its subscribers. Pasteur filed a counterclaim against Mrs. Salazar and attempted to effectuate service of process while she was keeping vigil by the hospital bed of her dying son. Further, Pasteur has previously taken inconsistent positions in litigation before this court, those positions calculated to benefit the company at the expense of its subscribers. Puig v. Pasteur Health Plan, 640 So.2d 101 (Fla. 3d DCA 1994).