ALTENBERND, Judge.
Clearwater Land Company, which operates a continuing care retirement community called Regency Oaks, appeals a final summary judgment in a declaratory action in favor of four residents of the community, Herbert A. Koepp, W.R. McMahon, James Feffer, and Clarence Mills. The *1023 dispute between the parties involves the interpretation of the “free days” provisions of the Regency Oaks’ life care agreement. We affirm the summary judgment declaring that' the value of a “free day” applied to home care services must be based on the cost of a day of nursing center care, rather than the cost of a day of assisted living. Although the trial court may have intended its language in the order on rehearing as dicta, we reverse that part of the order that appears to establish a precise conversion rate between the value of nursing center care and home health care services.
When Regency Oaks first opened in 1991, the continuing care retirement community included independent living facilities and a nursing center, but did not include an assisted living facility. Apparently, the developers of Regency Oaks planned to build an assisted living facility as part of the community after the population in the community increased. That assisted living facility was opened in September 1997.
Although Regency Oaks did not provide an assisted living facility until 1997, it provided home health care services for its residents from its inception. The developers of Regency Oaks allegedly viewed the home care services as a substitute for assisted living care. Nevertheless, the “Residency and Care Agreement,” which each resident was required to sign before entering the community, made no reference to any future assisted living facility.
Regency Oaks drafted this residency and care agreement, subject to the requirements of chapter 651, Florida Statutes (1991). Section 651.118(ll)(b) requires that continuing care agreements provide residents with a minimum of 360 days, cumulative, of nursing home care. In an effort to meet this requirement, Regency Oaks provided each resident with 22 “free days” of nursing center care that could be used each quarter until the resident received a total of 360 days of “free” care. The contract, however, included language giving each resident an option to convert this statutorily required benefit into home health care. Residents essentially trade “free days” of nursing center care for home health care services. It is this portion of the agreement that generated the parties’ dispute.
The portion of the agreement providing for “free days” reads as follows:
REGENCY OAKS agrees to provide RESIDENT ... at no additional cost, with 22 days of health services at the Nursing Center within any three month period not to exceed 360 days during the period of residency at REGENCY OAKS.... The health services provided to RESIDENT by REGENCY OAKS shall be the services normally provided within the semi-private room rate in the Nursing Center to persons who have not entered into residency and care agreements. REGENCY OAKS shall provide such free days upon the exhaustion of benefits provided pursuant to applicable federal, state, local or other governmental health care legislation, such as Medicare and Medicaid.
If RESIDENT requires home health services, then upon mutual agreement of RESIDENT and REGENCY OAKS, REGENCY OAKS will make arrangements to provide such necessary home health services to RESIDENT at such rates as are established by REGENCY OAKS from time to time. If RESIDENT is entitled to any free days of health services at the Nursing Center as provided above, then RESIDENT may elect to apply such free days as payment for the foregoing home health services at a conversion rate established by REGENCY OAKS from time to time.
Regency Oaks charged a daily rate for services at the nursing center. It charged an hourly rate for home health care services. After the assisted living facility was established, it charged a lower daily rate for the assisted living facility than for *1024 nursing center care. All of these rates changed from time to time.
Each resident involved in this lawsuit entered into his agreement before Regency Oaks completed the assisted living facility. Each arranged to receive home health care services from Regency Oaks, and then sought to pay the bills incurred using the “free days” conversion rate. The residents interpreted the agreement to provide a credit for the hourly charges they incurred for home health services at a conversion rate based on the amount Regency Oaks charged for a day at the nursing center in a semi-private room. Regency Oaks, on the other hand, interpreted the contract to allow it to establish a conversion rate using some other basis. It chose to use a “conversion rate” based on the lower rate it charged for assisted living.
When the residents were unable to resolve this dispute with Regency Oaks, they sought a declaratory action in the trial court. After a period of discovery, the residents and Regency Oaks each moved for summary judgment. Each party asserted that the agreement was unambiguous and supported their interpretation of the document. The trial court determined that the conversion rate called for in the agreement was necessary because Regency Oaks charged a daily rate for the nursing center and an hourly rate for home health care. The trial court concluded that the contract required the conversion rate to include as part of its calculation the rate charged per day for a semi-private room at the nursing center, and that the conversion rate could not be linked to the rate at the assisted living facility as Regency Oaks asserted. The trial court thus entered summary judgment in favor of the residents.
After Regency Oaks moved for rehearing, the trial court entered a more extensive order. In the order on rehearing, the trial court further explained its reasoning and added a paragraph attempting to explain why Regency Oaks’ interpretation of the contract was not “fair and equitable.” The trial court attempted to apply the principle announced in its initial order to specific health care bills in the record to determine how a conversion rate would apply and what credit would be due. Thereafter, the trial court entered a final summary judgment incorporating these two orders.
We affirm the trial court’s interpretation of that portion of the contract containing the “free days” conversion rate. Although the agreement involved in this case is not an insurance contract, it involves the type of risk-shifting inherent in contracts of insurance and it is statutorily regulated in a similar manner. See ch. 651, Fla.Stat. (1991). The contract, drafted by Regency Oaks and signed by would-be residents without bargaining or negotiation, is a contract of adhesion. See Pasteur Health Plan, Inc. v. Salazar, 658 So.2d 543 (Fla. 3d DCA 1995). Thus the contract must be construed in favor of the resident. The plain language of the provision supports the residents’ claim that the conversion rate must be based on the daily charge for nursing center care, not assisted living care.
Regency Oaks appears to misunderstand the nature of its rights to establish a “conversion rate.” A conversion rate is a formula used to convert one unit of measurement to another. For example, the conversion rate for inches to feet is 12:1 or feet = inches/12. In this case, the formula used to convert the daily rate for nursing center care into hours of home healthcare services may be less precise or more complex than a conversion rate used in pure mathematics, but the conversion rate must still be a formula established using the values set for nursing center care and home health care services. It cannot be established using other values, even if that was the unexpressed original intent of Regency Oaks.
We reverse that portion of the court’s order that attempts to apply its *1025 interpretation to specific health care bills. The record was not sufficiently developed to allow the trial court to resolve each particular billing dispute, and it is not clear that these issues are ripe for declaratory relief. The contract allows Regency Oaks to set the “conversion rate” by establishing the rate for nursing center care and the rate for home health care, and by setting, in good faith, certain rules for the conversion from one rate to the other.[1] Until Regency Oaks sets a conversion rate based on the trial court’s interpretation of this contract, there would appear to be no controversy requiring a declaratory judgment interpreting that conversion rate.
The need for a conversion rate based on the nursing center rate rather than the assisted living rate was the heart of the dispute between the parties in the trial court and the basis for each requesting summary judgment. It may be that the resolution of this issue makes the remaining disputes between the parties moot. In the resident’s second amended complaint, however, they requested that the trial court “construe and declare the rights and obligations of the parties in the agreement.” The trial court’s order, as modified by this opinion, does not necessarily resolve the disputes of each party as to their particular bill. Given our reversal of a portion of the trial court’s order and the broad relief requested by the residents, we remand for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
PARKER A.C.J., and GREEN, J., concur.

. By way of illustration, if Regency Oaks charged $20 per hour for home health care and $100 per day for nursing home care, it might in good faith set a "free day” conversion rate under which a "free day" could be exchanged for only 5 hours of home health care. This record does not contain the detailed information about these two differing services that might warrant Regency Oaks making modest adjustments to such a pure mathematical conversion rate.